IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Kofi Boateng Oppong,

        Plaintiff,

v.                                  Case No. 12-1276-JTM

Camelot of Kansas,

        Defendant.

MEMORANDUM AND ORDER

The court has before it defendant Camelot of Kansas's Motion for Summary Judgment (Dkt. 30). After reviewing the parties' briefs and the evidence submitted with them, the court grants the motion for the following reasons.

## I. Uncontroverted Facts

Plaintiff Kofi Boateng Oppong, a black male, was born in Ghana and immigrated to the United States on an F-1 Student Visa. Camelot of Kansas employed Oppong as a Teacher-Counselor at its Riverside facility (now known as Riverside Academy) in Wichita, Kansas from April 14, 2008 through August 25, 2010. As a Teacher-Counselor, Oppong's primary responsibilities were providing supervision, guidance and direction to emotionally and behaviorally-challenged youth in a psychiatric residential treatment setting.

Since April 14, 2008, Ngeli Kilangwa has been Camelot's Group Living Director at Riverside Academy. As the Group Living Director, Kilangwa is responsible for Teacher-Counselors and their supervisors. Kilangwa is also a black male. Also since

April 14, 2008, Leesa Beam has been the Business Office Manager at Riverside Academy; she is responsible for human resources issues at the facility.

On August 18, 2010, Oppong spoke with Kilangwa just prior to clocking in. Kilangwa asked Oppong about Carroll Lewis, an ex-employee who Kilangwa thought might file a complaint with the EEOC. Oppong told Kilangwa that Lewis had contacted him and that he gave a statement in support of Lewis's claim. Kilangwa told Oppong not to speak with Lewis or the EEOC about Lewis's claim.

In late August 2010—the exact date is unknown—a fourteen-year-old Riverside resident reported to his therapist that Oppong had hit, kicked, and punched him and made him say the word "nigger" as punishment for the resident calling a staff member "nigger bitch." The resident alleged that Oppong wrapped him in a white bed sheet, cut holes in a pillow case, and made him wear it, resembling a the garb of a member of the Ku Klux Klan. The resident also reported that staff members Moses Edagwa and Aaron Williams were present during the incident.[1] He claimed that while he wore the white sheet and pillow case, Oppong and Edagwa taunted him and encouraged other residents to do the same.

The resident's therapist reported this to Kilangwa, who investigated by interviewing several people. He questioned Oppong and Edagwa about the incident; each denied any involvement. Kilangwa spoke with Williams, but he later determined that he had not worked on the day the incident occurred, which Oppong does not dispute. Kilangwa spoke to John Branson, another Teacher-Counselor who had

---

[1]Edagwa and Williams are also black, and Edagwa is an immigrant from Africa.

witnessed the incident. Branson corroborated the resident's report to the extent that he saw the child being taunted while dressed in a white sheet and hood. Branson told Kilangwa that when he witnessed the incident, Edagwa told him to "mind his own business," but Branson did not indicate that Edagwa had participated in dressing or taunting the resident. Following his interview of Branson, Kilangwa interviewed seven residents who were present during the incident, and each of them corroborated what Branson had told him.

At this point, the court notes that prior to his termination in August of 2010, Oppong had incurred a substantial disciplinary history. Within his first two years at Camelot, Oppong received a disciplinary counseling six times, twice for disciplining residents inappropriately. One of these incidents resulted in the Kansas Department of Health and Environment ("KDHE") issuing a notice concluding that Camelot was not in compliance with Kansas law because of Oppong's conduct.

Based on his investigation of the incident, Kilangwa believed Oppong had dressed the resident child in KKK garments and allowed other residents to taunt the child. Kilangwa conferred with Leesa Beam, the Business Office Manager, about what action Camelot should take. They agreed that based on the severity of the event in question and Oppong's prior disciplinary history, Camelot should terminate Oppong's employment. They presented this conclusion to Camelot's Executive Director, Heather Sell, and she agreed. Accordingly, Camelot terminated Oppong's employment on August 25, 2010.

Camelot suspended Edagwa but did not terminate his employment. Kilangwa believed that Edagwa was only a witness to the incident and did not actively participate in it. Additionally, Edagwa had no prior disciplinary record. Camelot did not terminate Williams either because Kilangwa determined that he was not working at the time of the incident.

When Kilangwa received the initial report of the incident in late August, he believed that the therapist for the victim's residential unit already had reported the matter to SRS. After SRS did not appear to investigate the incident, Camelot reported the incident to SRS on September 2, 2010. As a result of Oppong's dressing the resident as a KKK member, Camelot received a citation from KDHE for "Non-Compliance" with Kansas law, an infraction that could potentially jeopardize Camelot's license to operate.

On August 2, 2012, Oppong filed this case against Camelot asserting discrimination based on race and national origin under § 1981 and retaliation for his involvement in Carroll Lewis's EEOC complaint.

## II. Legal Standard – Summary Judgment

Under FED. R. CIV. P. 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

When ruling on a motion for summary judgment, the court draws all reasonable inferences from the factual record in favor of the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant need not negate the nonmoving party's claim, but rather "[point] out to the court a lack of evidence for the nonmoving party on an essential element of the nonmoving party's claim." *Id.* at 671. To negate summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is not a "disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327 (quoting FED. R. CIV. P. 1).

## III. Analysis

### A. Discrimination Based on Race or National Origin

Oppong claims that he was discriminated based on his race and national origin. A plaintiff may prove discrimination by providing direct evidence or indirect circumstantial evidence. If, as here,[2] a plaintiff uses indirect evidence to prove

---

[2]Oppong alleges that another employee in a nondecision-making position made fun of Oppong's accent and called him a "dark skinned African." Oppong does not allege that he reported this to anyone, let alone a manager, so the court does not consider this direct evidence of race discrimination by Camelot. Oppong also alleges that Kilangwa made comments praising his home country's soccer team and

discrimination, he must "allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *See Notari v. Denver Water Dep't*, 971 F.2d 585, at 590 (10th Cir. 1992). Further, if the plaintiff uses indirect evidence to prove unlawful discrimination, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973). This framework is appropriate for analyzing Section 1981 claims as well as those based upon Title VII. *Malik v. Amini's Billiard & Bar Stools, Inc.*, 454 F. Supp. 2d 1106, 1111 (D. Kan. Sept. 28, 2006). To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees. *Carney v. City of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (citation omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the defendant makes such a showing, the burden reverts back to the plaintiff to set forth facts that raise a genuine issue of material fact that the proffered nondiscriminatory reason is pretextual and unworthy of belief. *Id.* If plaintiff can produce such evidence, the motion for summary judgment should be denied. *Id.*

Oppong fails to establish the third requirement of a prima facie case because he does not provide evidence that any similarly situated employee was treated differently.

---

denigrating Oppong's home country's soccer team. The court does not consider this direct evidence of national origin discrimination.

For employees to be similarly situated, they must be similar in all material respects. *Lucero v. Sandia Corp.*, 495 Fed. App'x 903, 910 (10th Cir. 2012) (holding that a plaintiff claiming discrimination based on low wage raises failed to provide enough evidence of other employees' performance, training, education or skills for the court to find they were similarly situated). When the adverse employment action is a termination of employment based on disciplinary reasons, a prima facie case requires the plaintiff to produce evidence other employees with similar disciplinary records or who made similar transgressions. *See Konzak v. Wells Fargo Bank, N.A.*, 492 Fed. App'x 906, 912 (10th Cir. 2012) (employees must be similarly situated to plaintiff "in all relevant respects"; alleged transgressions not being reported to HR or difference in nature of actions of comparable employees result in other employees not being similarly situated).

Here, the allegations reveal only two workers who were arguably similarly situated to Oppong: Williams and Edagwa. Both are black males and both were implicated in the same incident as Oppong, but neither was terminated.[3] But the facts reveal that Williams and Edagwa were not similarly situated to Oppong in all relevant respects. After Kilangwa investigated the incident, he determined that Williams was not working at the time of the incident, so he was not disciplined. This clearly excludes Williams from being similarly situated to Oppong, who was seen by several witnesses dressing the resident in KKK-like garb and taunting him. Kilangwa determined that

---

[3]For purposes of Oppong's national origin discrimination claim, Edagwa was similarly situated to the extent that, like Oppong, he was an immigrant from Africa. The court has no facts before it to show which specific country he came from.

although Edagwa was present at the scene of the incident, he did not actively participate in it. Based on his interviews with several residents and another Teacher-Counselor who had seen the incident, Kilangwa believed Edagwa was merely a witness. More importantly, Edagwa did not have a disciplinary record. In contrast, Oppong's record was substantial: Camelot had taken six disciplinary actions against him, including two for improper punishment of residents.[4] Regardless of Edagwa's role in the incident, which the undisputed facts show was minor compared with Oppong's, he and Oppong were not similarly situated in all relevant respects.

Oppong cannot establish a prima facie case because he cannot show that he was treated differently than another employee who had a similar disciplinary record and committed the same inappropriate behavior. *See Konzak*, 492 Fed. App'x at 912. Accordingly, the court grants summary judgment to Camelot on Oppong's claims for discrimination based on race and national origin.

*B. Retaliation*

Oppong also claims that his termination was in retaliation for his cooperation with a former Camelot employee, Carroll Lewis, who was pursuing an EEOC claim. The court shall apply the burden-shifting framework set forth in *McDonnell Douglas* to analyze this claim as well. *See Malik*, 454 F. Supp. 2d at 1115. Camelot assumes, for purposes of this motion, that Oppong can establish a prima facie case. Instead, Camelot

---

[4]Indeed, Oppong himself argues that one of his prior incidents of inappropriate discipline (threatening a resident with working inside a closet full of spiders) was so severe that Camelot was essentially negligent for not terminating his employment in February 2010, when the prior incident occurred.

argues that Oppong does not present evidence that Camelot's proffered neutral reasons are pretextual. This is where the court begins its analysis.

A defendant can rebut the presumption created by a prima facie case by asserting a legitimate nondiscriminatory reason for the employee's treatment. *Braden v. Cargill, Inc.*, 176 F. Supp. 2d 1103, 1114 (D. Kan. Oct. 19, 2001) (citation and internal quotation marks omitted). "The defendant does not at this state of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Id.* (citing *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992)). The defendant's reason for discharge, however, "must be reasonably specific and clear." *Id.* (citing *Flasher Co., Inc.*, 986 F.2d at 1316).

Camelot has shown that it reasonably believed he was the only employee responsible for dressing up a resident as a KKK member and inviting other residents to taunt him. It is undisputed that at the time of this incident, Oppong already had a poor disciplinary record that included two previous violations of company policy regarding the discipline of residents. Therefore, Camelot has met its burden to articulate a legitimate, nondiscriminatory reason for terminating Oppong.

Once the employer produces a legitimate nondiscriminatory reason for the adverse employment actions, then the presumption of discrimination created by the prima facie case " 'simply drops out of the picture.' " *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir.1994) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993)). It thus becomes "the plaintiff's burden to show that there is a genuine dispute of material fact

as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)), cert. denied, 518 U.S. 1019 (1996). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Braden*, 176 F. Supp. 2d at 1114. Evidence of pretext includes, but is not limited to, the following: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v. Oklahoma ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1328 (10th Cir. 1999). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Oppong does not provide any evidence from which a reasonable factfinder could infer that Camelot's legitimate, nondiscriminatory reason for his termination was pretextual. Oppong argues that the date of his incident with the resident is in dispute, but the court finds this immaterial. Neither party disputes that the incident happened in August 2010, and neither party disputes that Camelot terminated Oppong's

employment shortly thereafter. Oppong appears to argue that there was a substantial gap between the incident and his being fired. He argues that between the time of the incident and his termination, he told Kilangwa that he was cooperating with Lewis's EEOC investigation. Oppong believes that this is the true reason for his termination.

The court finds the date of the incident immaterial. Even if Oppong told Kilangwa about his involvement in Lewis's EEOC investigation in the meantime between the incident and Oppong's termination, that does not negate Camelot's legitimate reason for firing Oppong.

Oppong also argues that Camelot did not report the incident to SRS until September. The undisputed facts show that Kilangwa believed that the therapist who reported the incident to him had already reported it to SRS as well. Regardless, the fact is immaterial to the issue of pretext.

Further, Oppong provides no evidence supporting his timeline. Oppong's arguments rely solely on his own conjecture, which is insufficient. *See Morgan,* 108 F.3d at 1323. The court finds that Oppong has failed to set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. Accordingly, the court grants summary judgment to Camelot on the retaliation claim as well.

## IV. Conclusion

The court grants summary judgment to Camelot on Oppong's discrimination claims because Oppong cannot establish a prima facie case of discrimination based on race or national origin. The court also grants summary judgment to Camelot on

Oppong's retaliation claim because Oppong cannot prove that Camelot's reason for terminating his was pretextual.

IT IS THEREFORE ORDERED this 28th  day of August, 2013, that Camelot of Kansas's Motion for Summary Judgment (Dkt. 30) is granted.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE